Mr. Harris, you have, you're reserving three minutes for rebuttal. You may proceed when you are ready. May it please the Court, my name is Bruce Harris and I represent Sable Trail Transmission. The District Court should be reversed for three reasons. First, in its most recent Natural Gas Act case, Penney's v. New Jersey, the Supreme Court rejected the distinction between a private condom nor under the Natural Gas Act and the federal government itself. That distinction was central to the District Court's opinion that Sable Trail should be subjected to the state standard of compensation and not the Fifth Amendment when it exercises the federal power of eminent domain. Second reason, and I'm sorry to Mr. Clement Love because he argued that case before the Supreme Court and maybe could have given a cameo here, but important to recognize that that distinction was with respect to the Eleventh Amendment and whether a state could get hauled into federal court. And the Supreme Court said that private entity could and that private entity was a natural gas pipeline company. Second, in Alaska Pipeline, the Supreme Court said that there is, that Congress has preempted the field with respect to the award of attorney's fees in federal subject matter question cases. And so here we have a federal subject matter case, a federal question, and based on Alaska and other Supreme Court decisions, Congress has preempted the field. The only opportunity for an award of attorney's fees in a federal question case is where Congress calls for it explicitly and specifically and has not done so in the Natural Gas Act. So I know that you're not asking for us to overrule Georgia Power, which of course we couldn't as a panel anyway, but do you think that that case was well-reasoned in the first place? Are there differences in analysis that we would need to do or do you just think that the circumstances are different here? Well, I think the circumstances are clearly different because the Natural Gas Act involves interstate connectivity. And Section 21 of the Federal Power Act, the act that was at play in the Georgia Power decision, was on its face dealing with local issues, and that case in particular dealt with local issues. And the Court emphasized that, that it was a Georgia company exercising the power of eminent domain over Georgia landowners to create a power generation facility to create power for Georgia citizens. The Natural Gas Act is very different. The only thing that those two statutes share in common is the delegation of the power of eminent domain. Otherwise, the Natural Gas Act was designed to move natural gas from one part of the country to the other. And in fact, the act was amended in 1947 to take away the ability of states to interfere with that federal objective. One thing they share is precisely the same language that we're dealing with. True? With respect to the delegation. You're absolutely right, Judge Henkel. The delegation is the same, but why would it be? Because the language works. It was first in the Federal Power Act. Why wouldn't Congress adopt the same language with respect to delegating its federal power of eminent domain? Well, I guess the answer is if they meant something different, that would be why they would adopt a different language. Basically, your argument is they used exactly the same language, but they meant something different. No, that's not my argument, Your Honor. My argument is that the statutes do very different things. And so what Judge Grant asked was, is there a difference between Georgia power situation and this situation? And there is a significant difference, and that difference is in what the statutes seek to accomplish. But you kind of breezed right on past the main similarity in addition to the language, the fact that it's dealing with federal eminent domain. It is dealing with federal eminent domain, and the other difference that's very important for the Georgia power decision is that that court was not tasked to determine what standard of compensation applies. It wasn't tasked with determining whether the federal standard under the Fifth Amendment applies or the Georgia standard of compensation applies. That was not an issue in that case. What was the issue in that case was how do we measure the Fifth Amendment's just compensation standard? And this case is different because in this case, the district court relied upon the Georgia power decisions and others to apply a state standard of compensation to the federal power of eminent domain, which it cannot do. It's a matter of supremacy. When the federal power of eminent domain is exercised, the standard must be the Fifth Amendment. So you're saying that the district court got Georgia power wrong? I think that it got it wrong to the extent it extended it to a Natural Gas Act case, absolutely. So, well, but you're also saying that, you're saying more than that, I think. You're saying that the district court, you just said the district court, in Georgia power, we were looking at a different situation. We were looking at how to measure. But here, they were, the district court was rewriting the standard that should even be applied. It was applying a completely different standard. So that's what I'm saying is, are you suggesting the district court applied Georgia power, the holding of Georgia power incorrectly? It took it too far, the district court did here. The district court, in fact, could have applied Georgia power correctly had the court limited it to, this is how we're going to measure just compensation under the Fifth Amendment. So what I'm trying to get at is, say we agreed with you that the district court applied Georgia power incorrectly. Couldn't, if we sent it back, couldn't the district court say, okay, I hear what Sable Trail has argued. We're going to apply it correctly and reach the same result and still go to Florida law? It could go to Florida substantive law, but it could not change the standard. And that's what's really critical. That's a matter of supremacy and the federal power of eminent domain may not be subjected to a state standard of compensation. That statement is completely inconsistent with Georgia power, right? No, Georgia power doesn't change the standard of compensation. What it changes is what substantive law is used to measure it. And I know that that's a distinction that seems like semantics, but it's absolutely critical that the federal power of eminent domain must only be limited by the Fifth Amendment just compensation standard. Well, you say that. If Congress passed a law that said in a federal eminent domain proceeding, the landowner can recover attorney's fees, would we strike that down as unconstitutional because that's not in the Fifth Amendment? No, Your Honor. Of course, of course, of course not. So if Congress passed a statute and said in federal eminent domain, the measure of compensation will be the measure in the state where the property lies, explicitly incorporated state law into federal law, that would be constitutional, would it not? And Congress has done that, right? I mean, I see in 33 U.S.C. 532, 43 U.S.C. 36B, et cetera, et cetera. Congress has done that, but they didn't do it here. They didn't do it here. Congress knows how to do that. In fact, Congress has even subjected the federal power of eminent domain to a state standard of compensation. That has been done, and Congress may explicitly do that, but it didn't do it here. And we're bound by Georgia power in cases regarding that statute, but that case doesn't bind us here, right? That's right, Your Honor. And if we disagree with the rationale in that case, we're not obligated to apply that same rationale to a different statute, are we? You're not. And specifically here, because of the differences between these two statutes, Georgia power, the court there said it was a close call, and here it's not a close call because Georgia power was, as I said before, such a local decision locally in the Natural Gas Act, is on its face interstate. The second reason is that in Alaska Pipeline, as I mentioned, Congress has preempted the deal with respect to the order of attorney's fees and costs in federal question cases across the board. And so, Mr. Chairman, your questions are right on. If Congress had said, and we want attorney's fees to be awarded here, that would be permissible. But a federal court in a federal question case is not permitted to apply state law to award attorney's fees. In fact, in the F.D. Ridge case, the Supreme Court reversed the Ninth Circuit for doing precisely that. It was a different statute. It was the Miller Act. And there, there was no provision for an award of attorney's fees. And that didn't create a gap. It didn't create a hole in the law that needed to be filled. It was just Congress didn't provide for award of attorney's fees in a Miller Act case. The Ninth Circuit heard the case and decided that based on California law, attorney's fees should be awarded. And the Supreme Court reversed and said, Congress says specifically when attorney's fees are to be awarded, and they shouldn't be awarded here because Congress didn't say they should be. Finally, the critical element here is that Savior's Trail exercised only the federal power of eminent domain. If it had exercised a state power of eminent domain, then it would have been subjected to the state constitution. But because it only exercised the federal power of eminent domain, the Fifth Amendment's just compensation standard is the only standard that can be applied to it. Well, surely that one, that argument you agree is inconsistent with Georgia power. I'm sorry? Surely the argument you just made is inconsistent with Georgia power because whatever you say about local or interstate, Georgia power did involve the federal exercise of eminent domain. It did, and it involved an adoption of Georgia's substantive law. So that can't be unconstitutional under the law of the circuit. It's not because it was measuring just compensation under the Fifth Amendment, and that's the distinction. The Georgia substantive law that was being applied was not measuring the standard under the Georgia constitution. It was measuring the standard under the federal constitution. It happened that those were different. In this situation, a whole new standard has to be brought into play, and that standard is full compensation, which is the only basis for the award of attorney's fees and costs that was granted in this case. If there was another basis for it, there's no other basis for it. So the standard had to be shifted to the state standard. So if Florida law said just instead of full, this doesn't work? I mean, frankly, I would have thought just compensation is full compensation. If it's not full compensation, it's not just, and the other way around. If it's full compensation, it would be just. I mean, it seems to me those are two words that mean the same thing. But the Supreme Court doesn't think so. The Supreme Court has said just compensation does not include an award of attorney's fees and costs, period. And that is binding on not just this court and not just other federal courts. It's also binding on Florida state court, and that's a distinction that's important, that if the federal power of eminent domain is exercised in the state of Florida, the landowner does not receive full compensation. I mean, it's uncontroverted. If the United States exercises the power of eminent domain, that landowner is entitled to just compensation. Even though they own land in Florida and even though the state standard is full compensation, the landowner gets just compensation under the federal constitution. And what Penn East says is that there should be no distinction between the United States exercising that power and a natural gas pipeline company exercising that power. I see my time has elapsed. Thank you. And you do have time for rebuttal, so thank you. Mr. Brigham? Good morning. My name is Andrew Brigham. And along with Thor Hearn, we represent the Appalee Sunderman Groves, Inc. The company is owned by Jan and Chuck Sunderman. Their property is located in the center part of our state in Groveland, Florida. Respectfully, the Sundermans ask that this court affirm the decision of the law. Judge Moody's decision, specifically holding that substantive law of Florida, provides the rule of decision in terms of determining the compensation that Sable Trail owes the Sunderman family, is correct. And he rightly applied Florida's full compensation standard, which includes attorney's fees, cost, and interest as part of that measure. It is, if you will, in my home state of Florida, it is part of a property right. It is that civil right of private ownership that's defined by our compensation. Judge Hinkle, full compensation can exceed the federal baseline of just compensation, and it does in Florida. It includes the attorney's fees. If the federal government itself, qua the federal government, condemns property exercises eminent domain of a property in Florida, does full compensation or just compensation apply? In that instance, if it's the federal government that's the United States taking property, it is just compensation. So why is this different? Given the language in the statute, why is this different? There's a theme that I could really emphasize. It's the virtue of stare decisis. And stare decisis here particularly is heightened if we look at property rights. Kimball Foods is the precedent. That's the United States Supreme Court decision. It decided in 1979. It set a framework jurisprudentially to analyze situations where the federal eminent domain power was being used by a private licensee and not the United States government. And in those cases, there's a desire to not, under federalism principles, to not display state law. But to back up under Kimball Foods, you have to find the right to make federal common law. And where in this statute, in order to move to substantive state law, where in this statute do you see that right? Isn't the federal eminent domain standard clear? I don't see why we need federal common law for that question. That's correct, Your Honor. Kimball Foods would say don't go to federal common law as the rule of decision. You would prefer state substantive law, particularly when it involves property. We don't have a property law in federal common law. We've inverted the order in my colleague's argument, and that is that under Kimball Foods, Congress has to put into the statute a desire to want to have a uniform federal rule apply. If Congress is silent, and they are in the Natural Gas Act. But how do you see the Natural Gas Act as silent rather than simply incorporating the Fifth Amendment standard? It does not incorporate the Fifth Amendment standard explicitly, expressively. And Kimball Foods requires the text of the statute that Congress passes to do just that. If Congress wanted a uniform federal law to apply, Congress should have stated it. Kimball Foods is all about what happens when Congress does not state when Congress is silent. That's when we go through the choice of law analysis, where we're balancing the federal interest of the United States, not of a for-profit private licensing company. The interest of the United States is not thwarted. The federal program goes forward, even in the application of state substantive law, where attorneys' fees and costs are paid in Florida, because that is our property right for citizens. Very importantly, if you look at Kimball, it was decided in 1979. The year following, the Fifth Circuit decided Georgia Power. It applies to the Federal Power Act. The year after that, the Eleventh Circuit is created. The Eleventh Circuit in Bonner v. Pritchard adopts the Fifth Circuit as binding precedent. I'm sorry. I want to back up and make sure we're on the same page about what the statute says. Section H says, right of eminent domain for construction of pipelines, et cetera. When any holder of a certificate of public convenience and necessity, et cetera, et cetera, it may acquire the same by the exercise of the right of eminent domain in the District Court of the United States for the district in which such property may be located. Why isn't that enough to say that the Fifth Amendment eminent domain standard applies? Very specifically, that very phraseology is taken up in Georgia Power. It's also taken up by the Sixth Circuit. What if I think Georgia Power is wrong? Tell me from first principles, not from Georgia Power. First, the language that's used, it specifies that the filing can be done either in state court or federal court. Under the choice of law analysis in Kimball Foods, both applied by the Fifth Circuit in Georgia Power, by the Sixth Circuit in Columbia Gas, and most recently in 2019 by the Third Circuit in Tennessee Gas, all of them took that language and said Congress is silent in terms of applying a rule of decision. Therefore, when Congress is silent, we prefer state law to apply. And in this case, Congress isn't establishing a uniform law. We know it because they've said that the companies can file either in state or federal court. That's the analysis that's been in three circuit court opinions. It wasn't very detailed in any of those courts, and I think in a way a lot of those courts simply drafted off of Georgia Power. I'm, for my own part, just having a little trouble understanding why this statute doesn't establish the federal standard uniformly across the country. I'm not sure what else Congress would need to say in order to make that happen. Most of the courts that have analyzed the Natural Gas Act have said it's silent, so you have a different opinion. No, I know. I mean, I've read those opinions. And I really want to make that point explicitly. The case law that you're bound by, you know, Georgia Power is an en banc decision. Do you think we're bound by Georgia Power in this case for this different statute? It is a statute that Georgia Power itself, Columbia Gas, Tennessee Gas, have all equated to the Natural Gas Act. I think the analysis is similar, but do you think we're bound by the interpretive methods applied in that case? Yes, it's an en banc decision. And if we look to, like, Brian Garner's The Law of Judicial Precedent, Chapter 51, particularly with property, you have a heightened level. If we go back to Erie Railroad v. Tompkins, we start to see that Justice Brandeis, looking at Justice Story's original opinion in Swift v. Tyler, where federal common law is moving forward. In Erie v. Tompkins, we begin to see the Supreme Court saying, wait, when it comes to state law of local concern, it doesn't thwart the federal program. We should apply principles of federalism and apply state law. That is a jurisprudential framework that you are bound to. I guess that's the point, though. That's only when federal common law is at play. And my reading wouldn't require that we create or apply federal common law. It would require that we apply the Fifth Amendment standard that is operational in other contexts. You're begging the question. The question is, is what is the federal common law? Is there uniformity here? Has Congress – this is a cliché argument – occupied the field? There is no case authority that establishes the reasoning, Judge Grant, that you're making, the reading that somehow federal common law in terms of the property right, in terms of the measure of compensation, should apply. The Natural Gas Act is an act to allow a private licensee to build a linear corridor and use the eminent domain power, filing in either state or federal court. But that's not the federal government. That's the key point. If it's the federal government that is condemning, now you have an interest in the United States that is more robust. When it comes to a private licensee – and this is the whole nature of the Federal Power Act or the Natural Gas Act under Georgia Power, Columbia Gas, and also Tennessee Gas – there's a recognition that the purpose of providing natural gas to these different states isn't thwarted because you are applying state substantive law in terms of the measure of compensation. What's your response to all the statutes where Congress has imported state substantive law into the equation for compensation? All the case law, Your Honor, features the United States government as the condemning authority. That's the body of federal law where we apply just compensation under the Fifth Amendment. But this is a different instance. This is a private licensee company. So if you go through the choice of law analysis that Kimball Foods requires, now you're looking at the fact that we are going to not displace property law, which identifies the measure of compensation in each state. This pipeline went through Alabama, Georgia, Florida. The law that should apply in terms of the measure of compensation, the federal rule of decision, is state substantive law. Judge Hinkle, your colleague, Judge Walker, we had 263 cases approximately filed in Florida. Seventy went before the Northern District. About 190 went before the Middle District. They were filed in 2016. In 2017, Judge Walker from the Northern District filed an omnibus order that identified under Kimball Foods and applying Georgia power that Florida's state substantive law as to the measure of compensation would apply. And Florida did so for the Jacksonville Division and the cases in the Middle District. This matter came before Judge Moody in the Ocala Division only upon trial, a jury trial, where we were determining the jury instructions. He then also ruled that state substantive law applied. You have it in the final judgment. That includes attorney's fees, cost, and interest. But you understand, you're now talking about district court cases, which obviously don't bind us. And Judge Grant has talked about other circuit cases that are drafting off of Georgia power. So, too, are these district court cases. So in the absence of any other word from this court, of course they are looking to Georgia power. Obviously, we can shift focus if we so choose. It is, in fact, a different statute. How would you respond to opposing counsel's argument about the Supreme Court in Penn East saying we're not going to distinguish between the federal government and a private entity? Judge Branch, look at Penn East facts. You have the pipeline company seeking to take state-owned land. Judge Roberts' opinion in Penn East identifies that the authority to take state land is similar to the United States government authority. I would say that Penn East, completely different facts, completely different question. You have a federal program that is being thwarted if property can't be acquired by the private licensee company to acquire state-owned lands. When we're talking about paying private property owners, in this case, an illustrative example, the Sundermans had a 40-acre piece that's divided diagonally by a pipeline that has a billion cubic feet of gas a day traveling. That 40 acres, when it's bisected diagonally, loses value. The Sundermans were paid $252,000 more than what the company said that the taking was worth. But to defend themselves under Florida law, their attorney's fees and costs are paid for. If those costs were not paid for, that measure of compensation, that property right, that freedom would be far less. But surely you acknowledge the federal government had done the same thing and offered that initial price. Your clients would be in the same position and not entitled to attorney's fees. That's accurate, Judge Brantz, and that's because if we go through the Kimball Foods United States Supreme Court binding precedent, if we look at Georgia Power, if we look at Columbia Gas and Tennessee Gas, we're looking at the Federal Power Act, we're looking at the Natural Gas Act, linear corridors being acquired. The project is not thwarted by honoring the state's substantive law, and you don't have the federal government taking the property. So the interest of the United States, when it's a private licensee company, is far less. That's the whole purpose of going through the choice of law analysis. Judge Walker's opinion below, I would advocate, is a guiding light. It's very well reasoned. And if you recall this, when we deal with property, we are dealing with something that has its creation, that has its dimensions because of the state's substantive law. And if we have a private company using them in domain power, what Kimball Foods says and what the cases following Kimball Foods says is you don't stop the provision of natural gas at a cheap rate to allow, you know, interstate pipelines. A private company for profit will have to pay more if the state's substantive law pays a greater amount than just compensation. Kimball Foods says that doesn't thwart the project. The state law should determine the measure. It is a property right. Florida citizens, citizens in Georgia, Alabama, we have property rights. If we go to Kimball Foods in the analysis, it does what it should in terms of giving us this jurisprudential framework. The table trail here is advocating that you go by the cliche, that somehow the federal government has occupied the field. There is no case that removes the federal government as the taker where that is so. In other words, this common law of federal just compensation is in instances where it's the federal government taking the property. The distinction here under Kimball Foods is you have a private licensee corporation, and if we go through the choice of law analysis, it doesn't stop or thwart the federal intent. I have a kind of a personal stake here. It was my grandfather who had property taken in Florida in 1950. He represented himself and his neighbors, and that's the case that established the Florida precedent of including attorney's fees, costs, and interest in our measure of compensation. Florida citizens can have greater protections under our state law, and Kimball Foods would honor that when it doesn't thwart the federal project here. Your Honors, thank you so much. Very important case. This will set a standard, but again, I see stare decisis as a virtue, and I would ask that you apply Georgia power and stay consistent. Thank you. Thank you. Mr. Harris, you have three minutes. Could you start off by addressing what opposing counsel has talked about, that this statute, in fact, is silent as to what we should look to for compensation? It's not saying just compensation. It's not saying full compensation. It is silent. I will, Your Honor. Thank you. I don't think Congress thought that it needed to because Congress knew that it was granting the federal power of eminent domain, and COLE, the United States Supreme Court decision, had already concluded that the federal power of eminent domain not only exists, but exists separate and apart from state constitutional or state rights of eminent domain, and most importantly, that states may not limit in any way that exercise of the federal power of eminent domain. And so the delegation of the federal power of eminent domain must be governed only by the Fifth Amendment because of a matter of supremacy. Just as Mr. Brigham pointed out, when the state power of eminent domain is exercised in Florida, that power is limited by the state standard of compensation. And he's absolutely right, and we're colleagues and have handled thousands of cases involving eminent domain with the state power of eminent domain applying the full compensation standard. But that's not what happened here. Go back to the complaint. We want to start at the very beginning. Sable Trail was exercising its federal power of eminent domain, never pled that it had a state power, never pled that it was exercising any rights granted to it by the state. Only the federal power of eminent domain under the Natural Gas Act, and the only standard that can apply to that is the Fifth Amendment. The other cases that have been discussed do not apply state standards of compensation, state constitutional standards to the exercise of the federal power of eminent domain, whether it's the United States or a Federal Power Act delegee or a Natural Gas Act delegee. What those cases do is use state substantive law to measure the federal standard of compensation. And respectfully, the stare decisis that this Court should follow is the stare decisis of Doheny and Bodkell. Those are Supreme Court decisions dealing squarely with whether or not attorneys' fees and expert witness costs are included in the property when the federal power of eminent domain is exercised. And they conclude that it is not. Can you cite any case where the availability of attorneys' fees is not governed by the same law that supplies the rule of decision? I can't, Your Honor. I don't think that all I'm aware of is the Florida's Constitution requiring full compensation is how Judge Walker got to the award of attorneys' fees. I'm not just talking about eminent domain. I'm talking about across the board. Is there any case anywhere where the availability of attorneys' fees is not governed by the same law, same jurisdiction's law that provides the rule of decision? I can't think of any, but maybe you know some. I can't. In fact, I mean, I know the contrary is true. I know that where federal courts have tried to rely on an adoption of state law to award attorneys' fees, the Supreme Court has reversed and said that it did not. Exactly. Whichever law provides the rule of decision provides the availability of attorneys' fees. For that statute. The substantive attorney's fees for not making discovery or that kind of thing. It has to be explicitly called for in the statute in an act of Congress for attorneys' fees to be awarded. Setting aside what the actual rule is here, is it not fair to think that it would be more fair and reasonable to include attorneys' fees in this sort of a case? Well, Your Honor, the fairness question was argued and discussed by the Supreme Court in both the Dohany but more particularly in the Bodcow decision. And there the court actually said it may be more fair for a property owner when their property is taken by eminent domain to be awarded these extra costs, the cost of an appraisal or the cost of attorneys. But that's not what the Fifth Amendment requires. So Congress could make the decision that that would be more fair. Congress could do that. And they would have to do it explicitly. Could Congress decide that we're not going to give fees when it's the federal government because they've got some obligation to the society at large and to the people and maybe we can count on the federal government to be fair. But if we're going to turn it over to a private entity that's going to lowball everybody, maybe we ought to provide for fees in a private case. Could Congress do that? I think Congress could. I think Congress, but Congress didn't hear. And what the Supreme Court, I think the Supreme Court would defer to Congress' decision with respect to whether attorneys' fees and costs were granted. But they didn't do it here. And what the Supreme Court has said is for something as important as Eleventh Amendment immunity, there should be no distinction between whether the condemnation is brought by a natural gas pipeline company or the United States of America. I'll close with one final point to your questions, Judge Brandt, with respect to whether there's a gap to be filled. And the Georgia power analysis and the gaps that were looked at were based on the Rules of Decision Act. I mean, there's a statute at play here that says the laws of the several states except where the Constitution or treaties of the United States or acts of Congress otherwise require or provide shall be regarded as the rules of decision. That's what gets to the question of whether state substantive law should be applied. But here the predicate's not met because the Constitution provides the standard. The Fifth Amendment clearly states that just compensation is awarded when the federal power of eminent domain is exercised, and that should be applied by this Court. Thank you, Your Honor. Thank you. Thank you both. We have your case under advisement. This is our fourth and final case.